***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Stephenson with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. Stipulated Exhibit #1 is received into evidence and consists of I.C. forms and pleadings.
2. Stipulated Exhibit #2, admitted into evidence, includes Plaintiff's wage documents and time sheets. This also includes the information received December 7, 2009.
3. Plaintiff's discovery responses are admitted into evidence as Stipulated Exhibit #3.
4. Plaintiff's accident report is admitted into evidence as Stipulated Exhibit #4.
5. Plaintiff's records from the Employment Security Commission and benefit payment history is admitted into evidence as Stipulated Exhibit #5.
6. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #6.
7. Plaintiff's personnel file is admitted into evidence as Stipulated Exhibit #7.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, Plaintiff was 57 years old. She graduated from high school and attended college, where she took business administration classes, but she did not receive a degree. Plaintiff became a certified nursing assistant in 1969. After working with different nursing homes throughout North Carolina, she began working for Defendant in September 2006. *Page 3 
2. Plaintiff worked for Defendant as a "habtech" at a group home, where her job required her to assist clients and teach them about getting along in society, as well as playing sports and games and doing exercises with them.
3. Plaintiff testified that she earned $395.00 per week while working for Defendant. The Form 22 reveals an average weekly wage of $422.03 yielding a compensation rate of $281.37 per week.
4. On January 7, 2007, Plaintiff was driving a van to pick up one of the clients at his mother's house. The client requested that she stop the van at a store on the way home to get a CD for him. As Plaintiff was en route to get the CD, she went through an intersection and hit another vehicle. According to the accident report, Plaintiff was going approximately five miles per hour and the other vehicle was going one mile per hour. Plaintiff testified at the hearing before the Deputy Commissioner that her vehicle had just started moving from a stopped position and that the other car was stopped in the intersection when the impact occurred. It was raining and Plaintiff's front bumper hit the side of the other vehicle. Plaintiff's air bags did not deploy.
5. Plaintiff testified that after the collision, she was tense, but did not have her current complaints until a couple of days later. At the accident, she said she felt stress and her head hurt. According to Plaintiff, when she returned to Kinston that night, she was unable to concentrate and do her homework. Besides her headache and not being able to concentrate, Plaintiff did not notice any other symptoms at that time. However, she said the next day she began having stiffness in her neck and her right shoulder.
6. Plaintiff first received medical treatment on January 9, 2007 at Pitt County Memorial Hospital Emergency Room, where she complained of neck and right trapezius pain. *Page 4 
7. The next time Plaintiff sought treatment on January 12, 2007 from a chiropractor, Dr. Kean, who had sent her an advertisement in the mail. The chiropractic records reveal that Plaintiff was mainly seen for 19 complaints which included: headaches, neck pain/stiffness, mid-back pain, low back pain, arm pain, leg pain, muscle spasm/cramping, arm/leg weakness, sleeping problems, fatigue, depression, diarrhea, loss of memory, dizziness, numbness in fingers, constipation, loss of balance, cold feet, and numbness in the right arm. Plaintiff also told the chiropractor, contrary to the accident report, that the other vehicle was "traveling at approximately 45 miles per hour." Plaintiff was regularly seen by Dr. Kean from January 16 through February 21, 2007.
8. On February 1, 2007, Dr. Kean released Plaintiff to return to work with a lifting restriction of no more than ten pounds for two weeks.
9. Mr. David Snodgress testified that Plaintiff did not submit a valid doctor's note or any documentation to Human Resources substantiating that she could be out of work, until they received the note in February 2007.
10. On February 13, 2007, Plaintiff referred herself to East Carolina Neurology for headaches on the right side and the back of her head. She also reported some discomfort in the right side of her beck radiating down into her arms, with some occasional dizziness, but no other symptomology. Dr. Rodney Leacock noted that "diagnostic considerations certainly include post-concussive syndrome, although somewhat remote in nature."
11. On February 9, 2009, Dr. Leacock sent a letter to the undersigned relating that he had first seen Plaintiff on February 13, 2007, and when he last saw her in December 2007, her headaches had improved and she was tolerating her blood pressure medication well. During the *Page 5 
course of her treatment, Plaintiff had undergone an MRI of the brain and am MRI of the thoracic spine, both which showed no significant abnormalities.
12. Dr. Leacock stated, "And again a concluding diagnosis was that of post-concussive-type syndrome, again possibly related to the motor vehicle accident." Dr. Leacock also noted that "the latter part of her visitations, particularly over the latter year, she had more problems with her neck/trypesis muscles, lower back, then the issues of arthritis and even fibromyalgia were considered."
13. Dr. Leacock last treated Plaintiff in December 2007. He did not express an opinion to a reasonable degree of medical certainty that any of Plaintiff's medical conditions were more likely than not caused by the automobile accident of January 7, 2007.
14. Mr. David Snodgress testified that it was against Defendant's rules and regulations for Plaintiff to take the client to get the CD without preauthorization for the deviation. However, this deviation for the CD benefited the client that Defendant's service, and therefore was a benefit for defendant.
15. On June 9, 2007, Plaintiff returned to work at Greenfield Place, where she earned a greater average weekly wage than she had earned with Defendant prior to the automobile accident.
16. On August 9, 2007, Plaintiff began working at Pitt Memorial Hospital, where she again earned a greater average weekly wage than she earned with Defendant prior to the automobile accident.
17. In May, 2008 she sought treatment from ECU Physicians, first seeing Dr. Nelson in neurology and then Dr. Treadwell in rheumatology/immunology. At that time she complained of pain in both groins, her right arm, her upper and lower back, and tension and stiffness all over *Page 6 
her body. No true swelling in her joints was revealed and there was no radiculopathy. Plaintiff indicated to Dr. Treadwell that she has a burning pain in her arms and in her hips whenever she lifts a patient. Plaintiff was no longer employed with Defendant-Employer at that time. All tests were negative. Plaintiff saw other physicians with ECU Medical Center and the ultimate assessments were unspecified or possible fibromyalgia. The physicians did not relate Plaintiff's problems to her motor vehicle accident.
18. Plaintiff saw Dr. Gregg Hardy on March 10, 2009 for pain in her right arm. Dr. Hardy could not find any neurological basis for her complaints. She went to Dr. Hardy because Dr. Treadwell had said she could work as of March 15, 2009 and she did not think she could. Dr. Hardy found there was no neurological basis for her to remain out of work. Dr. Hardy did not relate any of plaintiff's complaint's to the motor vehicle accident on January 7, 2007.
19. From Plaintiff's last date of employment with Defendant on January 7, 2007 until she returned to work on June 9, 2007 for a different employer, she did not provide any documentation that she looked for work. However, she testified that she looked for jobs online and that the Job Link at the Employment Security Commission helped her get her job at Pitt Memorial Hospital.
20. Plaintiff received unemployment benefits from February 4, 2007 through May 29, 2007 at a rate of $216.00 per week.
21. The greater weight of the evidence is that Plaintiff sustained minor compensable injuries arising out of and in the course of her employment with defendant-employer when she was involved in a motor vehicle collision on January 7, 2007.
22. Plaintiff was out of work with defendant-employer beginning January 8, 2007. The greater weight of the evidence is that from February 1, 2007, the date of Dr. Kean's release *Page 7 
for plaintiff to return to work, that plaintiff was able to return to work and is not entitled to any temporary total disability compensation after that date. Plaintiff is entitled to temporary total disability compensation from January 8, 2007 through February 1, 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence is that Plaintiff's motor vehicle accident on January 7, 2007 arose out of and in the course of her employment with Defendant-Employer and was compensable under the N.C. Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. As a result of Plaintiff's compensable injury on January 7, 2007 Plaintiff is entitled to temporary total disability compensation at the compensation rate of $281.37 per week from January 8, 2007 through February 1, 2007. N.C. Gen. Stat. § 97-29.
3. As a result of Plaintiff's compensable injury on January 7, 2007, Plaintiff is entitled to medical treatment that medical treatment arising out of her compensable injury. This includes the initial treatment after the motor vehicle accident, the treatment of Dr. Kean from January 16, 2007 through February 21, 2007 and Dr. Leacock's first evaluation on February 13, 2007, but not treatment by any subsequent physicians. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD *Page 8 
1. Defendants shall pay temporary total disability to Plaintiff at her compensation rate of $281.37 per week from January 8, 2007 through February 1, 2007.
2. Defendants shall pay for the medical expenses causally related to Plaintiff's compensable accident. This includes the medical treatment initially rendered at the emergency room, and treatment from January 16, 2007 through February 21, 2007 rendered by Dr. Kean and also Dr. Leacock's first visit on February 13, 2007.
2. Defendants shall pay the costs.
This the 18th day of June, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1